Ron WALLACE, Brian Matthews, David J. Lerner and Fred N. Roberts, derivatively on behalf of CENCOM CABLE INCOME PARTNERS II, L.P., Plaintiffs,

v.

Howard L. WOOD, Barry L. Babcock, Jerald L. Kent, Theodore W. Browne, II, Cencom Properties II, Inc., CC II Holdings, Inc., Cencome Partners, Inc., Cencom Cable Entertainment, Inc., Charter Communications, Inc., Charter Communications II, L.P., Charter Communications, L.P. and CC Cable, Inc., Defendants,

and

Cencom Cable Income Partners II, L.P., Nominal Defendant.

C.A. No. 15731.

Court of Chancery of Delaware, New Castle County.

Submitted: Sept. 14, 1999.
Decided: Oct. 12, 1999.

---

20. 11 *Del. C.* § 463.

Pamela S. Tikellis, James C. Strum and Robert J. Kriner, Jr. of Chimicles, Jacobsen & Tikellis, Wilmington, Delaware. Of Counsel: Lawrence P. Kolker and Gregory M. Nespole of Wolf Haldenstein Adler Freeman & Herz, New York, New York; Michael E. Criden of Hanzman Criden Korge & Chaykin, Miami, Florida; Lynda J. Grant of Goodkind Labaton Rudoff & Sucharow, New York, New York.

Daniel A. Dreisbach and Michael D. Allen of Richards, Layton & Finger, Wilmington, Delaware. Of Counsel: Stephen B. Higgins, Linda Carroll Reisner and Thompson Coburn, St. Louis, Missouri, for Defendants.

## *OPINION*

STEELE, Vice Chancellor.

## I. Issues Presented

Can holders of units in a Limited Partnership state a cognizable claim for breach of fiduciary duties against parent corporations of the Limited Partnership's corporate general partner, affiliates of that corporate general partner, and officers of that corporate general partner?

Officers, affiliates and parents of a general partner, *may* owe fiduciary duties to limited partners if those entities control the partnership's property. Clearly, those duties, when owed, may not be breached in a manner that harms the partnership.

I find plaintiffs have alleged sufficient facts which, if true, state a claim that defendants used their virtually unchecked control of the Partnership in order to enhance their self-interest at the expense of the Partnership. Therefore, I find that plaintiffs have stated a claim for breach of fiduciary duties owed by the defendant Officers, Affiliates and Parents.

Where the Limited Partners do state a cognizable claim for breach of fiduciary duty, may they also pursue apparently inconsistent claims that those same entities are non-fiduciaries who aided and abetted the General Partner's breach of fiduciary duty and who tortiously interfered with the Partnership Agreement?

In their opposition to Defendant's Motion for Judgment on the Pleadings, plaintiffs also creatively allege that the Officers, Affiliates and Parents aided and abetted the General Partner's breaches of fiducia-

ry duty, and that the Officers, Affiliates and Parents tortiously interfered with the Partnership Agreement.[1] Plaintiffs presumably advance these claims, which are inherently inconsistent with their primary claim, hoping to secure a fall-back position against the Officers, Affiliates and Parents in the event the primary breach of fiduciary duty claim is dismissed. Nevertheless, the plaintiffs plead facts which, if true, support the requisite elements for aiding and abetting. I conclude, therefore, that plaintiffs' aiding and abetting claim survives defendants' motion to dismiss. However, I dismiss plaintiffs' tortious interference claim as plaintiffs fail to allege facts that, even if accepted as true, support this claim.

## II. Background

Cencom Cable Income Partners II, L.P. was formed in 1987 to acquire, own and operate existing cable television systems. Response to the Limited Partnership offerings was less than enthusiastic as only 90,915 of the 250,000 available units were sold. As a result, limited funds were available for the planned acquisition of cable systems. A provision in the Partnership Agreement exacerbated this shortfall by prohibiting indebtedness for acquisitions in excess of 20% of the funds raised by the sale of Units.

Plaintiffs allege that the General Partner as well as the Officers, Parents, and Affiliates concocted a plan to circumvent this prohibition and to continue to make acquisitions. The plan contemplated that the Officers and Parents create other entities (the Affiliates) and use these entities,

---

1. Plaintiffs did not plead these causes of action in their Complaint, and, if necessary, ask for leave to amend. I grant leave to amend to add the aiding and abetting claim but not the claim for tortious interference with the Agreement. *See* Footnote 10.

which were primarily owned and funded by the Partnership, to acquire leverage, which would then be used to make the acquisitions. These acquisitions generated sizable fees for the defendants. In contrast, plaintiffs claim to be facing what appears to be a loss of 12.1% to 17.6% on their initial investment.[2]

Plaintiffs also plead the following noteworthy facts. Three of the four Officers are also directors of the General Partner. The fourth of the four Officers is the General Counsel and Secretary for the General Partner. All of the General Partner's stock is owned by a Parent defendant, and all of that Parent defendant's stock is owned by another Parent defendant. This second Parent defendant is owned and controlled by the Officers.

### III. Plaintiff's Contentions

In this derivative action, the Limited Partners contend that the defendants breached fiduciary and contractual duties owed to the Partnership and Limited Partners. More specifically, the Limited Partners claim that the defendants used Partnership funds to establish business entities, then wrongfully used these entities to circumvent a provision in the Partnership Agreement forbidding the Partnership from incurring debt in excess of twenty percent (20%) of the gross proceeds of the Partnership's public offering. Defendants' unremarkable motivation to engage in this behavior was, according to plaintiffs, financial. The defendants used the additional leverage to purchase cable systems and in the process generated fees for themselves. Plaintiffs argue these acquisitions were exorbitantly over-priced, made for purely self-interested reasons, and were adverse to the interests of the Limited Partnership.

Plaintiffs aver that the Officers, Affiliates and Parents aided and abetted the General Partner in wrongfully circumventing provisions of the partnership agreement, and tortiously interfered with the performance of the partnership. Plaintiffs further contend that the defendants usurped business opportunities available to the Limited Partnership.

Defendants counter by arguing that the defendants, excepting the General Partner, owe no fiduciary duty to the Partnership or the Limited Partners. Defendants further argue the Officers could only be liable for tortious interference if the allegedly interfering action exceeded the scope of their authority. Likewise, defendants claim plaintiffs failed to plead facts sufficient to show the Affiliates or Parents were "interfering parties", or intervened maliciously or in bad faith to injure plaintiffs. In their reply brief, however, defendants, for reasons unknown to me, fail to address plaintiffs' aiding and abetting claim.

### IV. Analysis

#### A. Standards applicable to Defendants' Motion for Judgment on the Pleadings

■■■ Defendants move for judgment on the pleadings pursuant to Court of Chancery Rule(h)(2) which permits a party to present a motion to dismiss for failure to state a claim upon which relief can by granted by motion for judgment on the pleadings pursuant to Chancery Court Rule 12(c).[3] As in evaluating any motion to dismiss, I must assume the truthfulness of all well-pleaded, nonconclusory allegations found in the Complaint and extend the benefit of all reasonable inferences that can be drawn from the pleading to the non-movant.[4] To award judgment on the pleadings in favor of the defendants, I must find that plaintiffs have either utterly

---

2. Am. Compl., para. 22.

3. *Kahn v. Roberts*, Del. Ch., C.A. No. 12324, Hartnett, V.C., slip op. at 5, 1994 WL 70118 (Feb. 28, 1994).

4. *Loudon v. Archer–Daniels–Midland Co.*, Del. Supr., 700 A.2d 135, 140 (1997).

failed to plead facts supporting an element of the claim [5] or that under no reasonable interpretation of the facts alleged in the Complaint (including reasonable inferences) could plaintiff state a claim for which relief might be granted.[6] Notwithstanding Delaware's permissive pleading standard, I am free to disregard mere conclusory allegations made without specific allegations of fact to support them.[7] With this standard in mind, I examine plaintiffs' allegations.

## B. Can the Officers, Parents and Affiliates be liable for Breach of Contract if they were not Parties to the Partnership Agreement?

 The only defendant who is a party to the Partnership Agreement is the General Partner. This fact is not disputed. It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.[8] Indeed, Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually.[9] In their reply brief, plaintiffs effectively abandon their breach of contract claim against the Officers, Affiliates and Parents, choosing instead to assert a tortious interference claim.[10] Not surprisingly, I dismiss any claim for breach of contract against the Officers, Parents and Affiliates.

## C. Does Plaintiff State a Cognizable Claim that the Officers, Parents and Affiliates owe Fiduciary Duties to the Limited Partnership and its Limited Partners?

 Unquestionably, the general partner of a limited partnership owes direct fiduciary duties to the partnership and to its limited partners.[11] Chancellor Allen, by analogizing to fiduciary duties under trust law, extended this principle in *In re USACafes, L.P. Litigation ("In re USACafes")* [12], finding that, under certain circumstances, directors of a corporate general partner likewise may owe fiduciary duties to the partnership and to the limited partners. Chancellor Allen did not attempt to delineate the full extent of these duties, but they must surely entail "the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partner-

---

5. *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.,* Del. Ch., C.A. No. 13389, mem. op., Chandler, V.C., 1996 WL 506906, at *2 (Sept. 3, 1996), 1996 Del. Ch. LEXIS 116, at *6, ("when the non-moving party has the ultimate burden of proof on its claims, this Court may grant summary judgment if the moving party can demonstrate a complete failure of proof on an essential element of a claim.") [*4]

6. *Delaware State Troopers Lodge v. O'Rourke,* Del. Ch., 403 A.2d 1109, 1110 (1979) ("A complaint should not be dismissed upon such a motion unless it appears to a certainty that under no set of facts which could be proved to support the claim would the plaintiff be entitled to relief."); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.,* Del.Supr., 624 A.2d 1199, 1205 (1993) ("A motion for judgment on the pleadings may be granted only when no material issue of fact exists and the movant is entitled to judgment as a matter of law").

7. *Wolf v. Assaf,* Del. Ch., C.A. No. 15339, mem. op., Steele, V.C., 1998 WL 326662, at

*1 (June 16, 1998), 1998 Del. Ch. LEXIS 101, at *3–4.

8. *Crabtree v. Tristar Automotive Group, Inc.,* 776 F.Supp. 155, 166 (S.D.N.Y.1991).

9. *Brown v. Colonial Chevrolet Co.,* Del.Super., 249 A.2d 439, 441 (1968).

10. Apparently, plaintiffs now want me to treat Count I of their Complaint, titled "Breach of Contract", as the vehicle for a tortious interference claim against the Officers, Affiliates, and Parents. In the alternative, plaintiffs request leave to amend their complaint. Although Court of Chancery rules generally allow liberal amendment of pleadings, I will not allow plaintiffs to amend and add a separate count for tortious interference because, as I later explain, the amendment would be futile.

11. *Boxer v. Husky Oil Co.,* Del. Ch., 429 A.2d 995, 997 (1981).

12. Del. Ch., 600 A.2d 43 (1991).

ship."[13] This case requires that I examine the parameters of the fiduciary duties articulated by Chancellor Allen and apply them to the facts pleaded here by plaintiffs.

Chancellor Allen examined a complaint which alleged that the director defendants dominated and controlled the affairs of the limited partnership; failed to negotiate in good faith to enhance unitholders' values; agreed to sell all of the Limited Partnership's assets to a third party for an unfair price because the third party offered the director defendants a personal financial windfall; and participated in diverting partnership assets for their own benefit.[14] This complaint, Chancellor Allen concluded, did allege "facts which if true establish that the director defendants have breached fiduciary obligations imposed upon them as directors of a Delaware corporation or have participated in a breach of such duties by the General Partner."[15]

■ Plaintiffs make similar allegations here against the Officers, Affiliates and Parents. They allege that the General Partner "and those who own and/or control it personally participated in the wrongs complained of."[16] Plaintiffs repeatedly, in detail, and in a nonconclusory manner al-

lege defendants personally caused the Limited Partnership to enter into self-interested transactions adverse to the interests of the Limited Partners.[17] Plaintiffs claim they were promised a relatively stable investment, but without their knowledge or consent, defendants engaged in wrongful self-interested acts which converted the Limited Partnership into a highly speculative, highly leveraged investment.[18] Plaintiffs specifically aver that the defendants circumvented the Partnership's debt limitations by creating one of the Affiliate defendants, which was 84% owned by the Partnership but without debt limitations; and then used this Affiliate to make acquisitions in order to generate management fees.[19] Plaintiffs further contend that defendants, on two separate occasions, usurped business opportunities available to the Limited Partnership.[20]

Plaintiffs allege defendants breached their fiduciary duty by manipulating an appraisal process for personal gain at the expense of the Limited Partners.[21] Defendants subverted the appraisal process mandated by the Partnership Agreement by backdating the appraisal dates and making capital improvements to the sys-

---

**13.** *Id.* at 49.

**14.** *Id.* at 49–50.

**15.** *Id.* at 50.

**16.** Am. Compl., para. 20.

**17.** Am. Compl., paras. 23, 51, 52, 59.

**18.** Am. Compl., paras. 23–27, 44, 50–52. In detail, plaintiffs state,

"[A defendant Affiliate] promptly established a $48 million line of credit with certain banks. Upon information and belief, [the General Partner's] equity was used as collateral for this line of credit. [The defendant Affiliate] then proceeded to make acquisitions totaling $70.13 million of which $40.2 million, or more than half of the funds used, were borrowed. Moreover, that $40.2 million of borrowed funds represented 126% of the $31.75 million in cash invested in [that Affiliate]. Thus, although

the defendants promised the Limited Partners in the Offering Prospectus that '[t]he General Partner does not intend that the Partnerships will be highly leveraged,' defendants created an acquisition vehicle *with partnership funds* which *was* highly leveraged, which would divert Partnership funds from acquisitions already made by the Partnership, which would bring defendants millions of dollars in additional fees, which would deplete the Partnership's investment, thereby dramatically reducing the ultimate distribution to the Limited Partners, and which would leave the defendants with the ownership of valuable assets whose cash flow they would not have to share with any Limited Partners."

Am. Compl., para., 51(emphasis in original).

**19.** Am. Compl., paras. 23, 30–32.

**20.** Am. Compl., para. 60.

**21.** Am. Compl., paras. 23, 40, 73, 75, 80.

tems after those dates, according to Plaintiffs.[22]

In sum, plaintiffs allege adequate specific facts to support their claim that the Officers, Affiliates and Parents utilized Partnership assets which they controlled to enrich themselves at the expense of the Limited Partners.

Defendants urge me to distinguish the facts pled in this case from those pled in *In re USACafes*. I, however, cannot find any notable or meaningful distinction. The addition of the Parents' and Affiliates' as defendants may, arguably, be a minor distinction. Plaintiffs detail sufficiently the Parents and Affiliates control of the affairs of the Partnership including the creation of and distribution of Partnership assets for their own benefit. There is precedent in this Court extending fiduciary duties to similarly situated defendants.[23]

### D. Do Plaintiffs State a Claim for Tortious Interference with the Limited Partnership Agreement?

■ Plaintiffs allege that the Officers, Affiliates and Parents tortiously interfered with the Partnership Agreement causing the Limited Partners economic harm. To state a claim for tortious interference with a contract, plaintiffs must plead facts demonstrating (1) a valid contract, (2) about which the defendants have knowledge, (3) an intentional act by defendants that is a significant factor in causing the breach of the Partnership Agreement, (4) done without justification, and (5) which causes injury.[24] Plaintiffs sufficiently plead the existence of a valid contract (the Partnership Agreement), and knowledge of that contract by defendants. Plaintiffs also sufficiently plead that defendants committed intentional acts that were significant factors in causing the alleged breaches of fiduciary duty.[25] By way of specific factual averments, plaintiffs allege defendants induced the General Partner to breach the Partnership Agreement for self-interested reasons adverse to the interests of the Partnership without justification.[26] Finally, plaintiffs plead a detailed listing of alleged damages.[27]

■ However, the Officers could only be liable for tortious interference with their own company's contract if they exceeded the scope of their authority. "[E]mployees acting within the scope of their employment are identified with the defendant himself so that they may ordinarily advise the defendant to breach his own contract without themselves incurring liability in tort."[28] "This rationale is particularly compelling when applied to corporate officers as 'their freedom of action directed toward corporate purposes should

**22.** Am. Compl., paras. 73–82.

**23.** *See Barbieri v. Swing–N–Slide Corp.*, Del. Ch., Steele, V.C ., C.A. No. 14239, slip op. at 7–8, 1997 WL 55956 (Jan. 29, 1997) (holding "fiduciary duties may be imputed to a separate entity formed and controlled by fiduciaries for the purpose of engaging in a transaction with an entity to whom those duties are owed"); *James–River Pennington, Inc., v. CRSS Capital, Inc.*, Del. Ch., Steele, V.C., C.A. No. 13870, slip op. at 22–23, 1995 WL 106554 (March 6, 1995) (holding the duty of loyalty is owed by corporation to partnership because corporation controls the general partner); *In re Boston Celtics L.P. Litigation*, Del. Ch., Steele, V.C., C.A. No. 16511, mem. op. at 9, 1999 WL 641902 (stating "it is well settled that, unless limited by the limited partnership agreement, the general partner of a Delaware limited partnership and the directors of a corporate General Partner who control the partnership, like directors of a Delaware corporation, have the fiduciary duty to manage the partnership in the partnership's interests and the interests of the limited partners").

**24.** *Boyer v. Wilmington Materials, Inc.*, Del. Ch., C.A. No. 12549, Allen, C., slip op. at 23, 1997 WL 382979 (June 27, 1997).

**25.** Am. Compl., paras. 23, 24, 26, 27, 28, 29, 31, 32.

**26.** Am. Compl., paras. 23, 24.

**27.** Am. Compl., paras. 88–97.

**28.** W. Page Keeton Et Al., Prosser and Keeton on the Law of Torts § 129, at 990 (5th ed.1984).

not be curtailed by fear of personal liability.' "[29]

■ Defendants also argue that plaintiffs fail to allege specific facts concerning the Officers' supposed interference with the Partnership Agreement. While I disagree with defendants' assertion that plaintiffs fail to allege specific facts as to the Officers' role in the alleged breach of the Partnership Agreement, I fail to find a specific allegation that the Officers exceeded the scope of their authority to act on behalf of the General Partner. Merely stating that the Officers controlled the General Partner fails to support a claim of tortious interference. If the facts pleaded are taken as true, I do not doubt that the Officers controlled the General Partner. However, while plaintiffs allege with sufficient specificity that the Officers used this control for self-interested reasons adverse to the Partnership's interests (thereby allegedly breaching their fiduciary duty to the Limited Partners and the Limited Partnership), plaintiffs do not allege that the Officers exceeded the scope of their authority to direct the General Partner's business decision making when they committed these self-interested acts.

■ As for the Affiliates and Parents, "there can be no non-contractual liability to the affiliated corporation" for tortious interference unless plaintiffs plead and prove that: (1) the Affiliates and Parents were "interfering part[ies]," and (2) the Affiliates and Parents interfered "not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiffs."[30] It is not unfair to regard a parent and its wholly owned subsidiary as a single economic unit. Beginning with that premise, courts have reasoned that just as an entity cannot be liable for interfering with the performance of its own contract, a parent cannot be liable for interfering with the performance of a wholly owned subsidiary.[31] As for affiliates, Chancellor Allen has opined, "the relationship among wholly owned affiliates with a common parent is no different, insofar as is relevant here, than that between a parent and a subsidiary. Such entities share the commonality of economic interests which underlay the creation of an interference privilege."[32] That same reasoning applies here.

Allegations, even when taken as true, that the Officers utilized the Parents and Affiliates to complete self-interested transactions to the detriment of the Partnership are not sufficient to meet the elements required to hold the Officers, Affiliates and Parents liable for tortious interference with a contract. Accordingly, defendants' motion to dismiss plaintiffs' tortious interference claim is granted.

**E. Do Plaintiffs State a Claim for "Piercing the Corporate Veil" of the General Partner?**

■ "Persuading a Delaware court to disregard the corporate entity is a difficult task."[33] In order to state a cognizable claim to pierce the corporate veil of the General Partner, plaintiffs must allege facts that, if taken as true, demonstrate the Officers' and/or the Parents' complete domination and control of the General

29. *Young v. West Coast Indus. Relations Assoc., Inc.,* 763 F.Supp. 64, 77 (D.Del.1991), *quoting Steranko v. Inforex, Inc.,* 5 Mass.App. Ct. 253, 362 N.E.2d 222, 235 (1977). *See also Shearin v. E.F. Hutton Group, Inc.,* Del. Ch., 652 A.2d 578, 589 (1994) (stating directors cannot be held personally liable for inducing a breach of contract by their corporations when they act within their role).

30. *Shearin,* 652 A.2d at 591.

31. *See, e.g., American Medical International, Inc. v. Giurintano,* Tex.App., 821 S.W.2d 331 (1991) (holding that antitrust immunity of parent for conspiring to restrain trade with subsidiary is applicable to claim for interference with contract).

32. *Shearin,* 652 A.2d at 591–92 n. 14.

33. *Harco Nat. Ins. Co. v. Green Farms,* Del. Ch., C.A. No. 1131, Hartnett, V.C., slip op. at 9–10, 1989 WL 110537 (Sept. 19, 1989).

Partner.[34] The degree of control required to pierce the veil is "exclusive domination and control ... to the point that [the General Partner] no longer ha[s] legal or independent significance of [its] own." [35]

■■■■■ Piercing the corporate veil under the alter ego theory "requires that the corporate structure cause fraud or similar injustice." [36] Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud. Plaintiffs merely state that the purpose of the General Partner is to manage and operate the Partnership. Plaintiffs have not stated sufficient facts that if true would justify disregarding the corporate form of the General Partner. Therefore, I grant defendant's motion to dismiss plaintiffs' claim to pierce the corporate veil of the General Partner.

## F. Do Plaintiffs State a Claim for Aiding and Abetting?

■■■■■ In order to show that the Officers, Affiliates and Parents aided and abetted the General Partner's breach of its fiduciary duties, the plaintiffs must plead facts that if true would demonstrate (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) a knowing participation in the breach by the non-fiduciary defendant and (4) resulting damages to plaintiffs.[37] Plaintiffs plead, and defendants do not dispute, the existence of a fiduciary relationship between the General Partner and the Limited Partners.

Plaintiffs also plead that the General Partner committed numerous breaches of fiduciary duty resulting in economic damage to plaintiffs. Specifically, the Limited Partners claim that the defendants' wrongful actions cost the Limited Partners millions of dollars in lost value, fees, use of money and Partnership opportunities while generating millions in fees to defendants and enabling them to acquire the Partnership's assets at improperly depressed prices.[38]

■■■■ This claim, which on its face assumes the officers, parents and affiliates to be "non-fiduciaries," seems inconsistent with plaintiffs primary argument that each defendant owes fiduciary duties to the Limited Partners. Nonetheless, I will not dismiss plaintiffs' aiding and abetting claim as I may later decide, after discovery or at trial, that plaintiffs cannot prove the pleaded requisite control necessary to establish the existence of a fiduciary relationship between each defendant and the Limited Partnership and/or the Limited Partners.[39] Therefore, plaintiffs may continue to pursue the inconsistent, conflicting, aiding and abetting claim if they so choose. The defendants' motion to dismiss the aiding and abetting claim is denied.

## V. Conclusion

For the foregoing reasons defendants' motion to dismiss is *granted* as to the contract claim against the Officers, Affiliates and Parents, the tortious interference claim, and the claim to pierce the General

---

**34.** *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 271 (D.Del.1989).

**35.** *Hart Holding Co. v. Drexel Burnham Lambert, Inc.*, Del. Ch., C.A. No. 11514, Allen, C., slip op. at 26, 1992 WL 127567 (May 28, 1992).

**36.** *Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc.*, Del.Supr., 685 A.2d 724, 729 (1996).

**37.** *Nebenzahl v. Miller*, Del. Ch., C.A. No. 13206, Steele, V.C ., mem. op. at 16, 1996 WL 494913 (Aug. 26, 1996, corrected Aug. 29, 1999); *In re Santa Fe Pacific Corp. Sharehold-*

*er Litig.*, Del.Supr., 669 A.2d 59, 72 (1995) (citing *Weinberger v. Rio Grande Industries, Inc.*, Del. Ch., 519 A.2d 116, 131 (1986)).

**38.** Am. Compl., paras. 83–87.

**39.** The relationship between the claim that the defendants owed fiduciary duties which they breached and the claim that they, in the alternative, aided and abetted the General Partner's (that they allegedly controlled) breaches of fiduciary duty interests me, in theory, but it appears to me to be a distinction more readily and carefully addressed after fact finding rather than by pre-trial dispositive motion.

Partner's corporate veil. Defendants' motion to dismiss the breach of fiduciary duty claims against the Officers, Affiliates and Parents, and the aiding and abetting claim is *denied*.