COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

February 26, 2016

Daniel B. Rath, Esquire
Rebecca L. Butcher, Esquire
Landis Rath & Cobb LLP
919 North Market Street, Suite 1800
Wilmington, DE  19801

Srinivas M. Raju, Esquire
Travis S. Hunter, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

Re:   *CIM Urban Lending GP, LLC v.*
      *Cantor Commercial Real Estate Sponsor, L.P.*
      C.A. No. 11060-VCN
      Date Submitted:  December 7, 2015

Dear Counsel:

This case is, first and foremost, a contract dispute among partners.  The primary debate is whether it is only a contract dispute.  Plaintiffs bolster their complaint with its contract claim with claims of fiduciary duty breaches, aiding and abetting those fiduciary breaches, and unjust enrichment.  The factual basis for the claims is all the same: the Defendant general partner overpaid an affiliate for work the affiliate did (or did not do) for the partnership.  The Defendants argue that the partnership agreement eliminated fiduciary duties and replaced them with

contractual standards that sound a lot like fiduciary duties, and that the fiduciary duty claims must be dismissed because they are duplicative of the contract claim. If there are no viable fiduciary duty claims, there can be no aiding and abetting breach of fiduciary duty claims either. Finally, an unjust enrichment claim cannot coexist with a contract claim where the contract claim engulfs the very foundation for the unjust enrichment claim. The contract claim will survive—there is no dispute about that; the facts underlying the other claims, however, are substantially the same. There will be very little, if any, difference in the discovery necessary to move this matter—whether only in contract or with the collection of related claims. Any significant litigation efficiencies would not appear to be dependent upon the outcome of the Defendants' motion to dismiss. Whether the claims can coexist and whether some should be eliminated because they are duplicative are nagging questions of our jurisprudence.

In addition, Plaintiffs have moved to compel responses or supplemental responses to certain discovery requests.

\* \* \*

Nominal Defendant Cantor Commercial Real Estate Company, L.P. ("CCRE") originates and purchases mortgage loans secured by commercial real estate and securitizes those loans in commercial mortgage backed securities or participates through them in other such securitizations. CCRE was created by Defendant Cantor Fitzgerald, L.P. ("CFLP") and subsidiaries of CIM Group LLC as a Delaware limited partnership. Defendant Cantor Commercial Real Estate Sponsor, L.P. ("CF General Partner") is one of CCRE's general partners. A few months after formation, Plaintiffs made their initial investments.

Plaintiffs are CIM Urban Lending GP, LLC ("CIM"), CIM Urban Lending LP, LLC, and CIM Urban Lending Company, LLC.[1] Their claims are brought individually and derivatively on behalf of CCRE.

The Second Amended and Restated Agreement of Limited Partnership (the "CCRE LP Agreement")[2] prescribes the relationship among the Plaintiffs and

---

[1] "CIM" sometimes refers to all plaintiffs.
[2] Verified Compl. ("Compl." or "Complaint") Ex. A.

Defendants as general and limited partners of CCRE. CF General Partner directs the operations of CCRE.

By Section 9.8(b) of the CCRE LP Agreement, CF General Partner is authorized to retain its affiliates to "provide any services other than Support services, including, without limitation, hedging transactions, securities underwriting and financial advisory services" for CCRE. CIM can find additional protection in Section 9.8(b) which requires that "any compensation paid to such service provider will be at competitive market rates charged by first-class unaffiliated service providers." CF General Partner has used an affiliate, Cantor Fitzgerald & Co. ("CF & Co.") to provide securities underwriting services.

That brings us to the core of the dispute. CIM alleges that, without its knowledge, CF General Partner "has caused CCRE, without the requisite disclosure to and approval by . . . CIM . . . to enter into an arrangement under which [CFLP] has charged CCRE blatantly improper 'underwriting fees' in connection with [thirty-five] of the [thirty-six] securitizations to which [CCRE]

contributed loans from its inception through October of 2014."[3]  CIM also claims

that CF General Partner has failed, despite requests, to provide to it information to

which it was entitled.

* * *

Plaintiffs have structured their Complaint in four counts.  First, there is a

claim for breach of contract against CF General Partner because it paid fees to

CFLP for underwriting services on terms that were "above market and have not

been approved by the CIM General Partner"[4] and for a failure to provide proper

documentation and information as required by Section 3.5(b) of the CCRE LP

Agreement.[5]  Although the Defendants have moved to dismiss, they do not now

contest the contract claim.  That, however, leaves the other three claims for

consideration.  In the second count, Plaintiffs bring an unjust enrichment claim

against CFLP because it received "grossly inflated 'underwriting fees' that violate"

the CCRE LP Agreement.[6]  In the third count, Plaintiffs assert a fiduciary duty

---

[3] *Id.* ¶ 30.
[4] *Id.* ¶ 86.
[5] *Id.* ¶ 88.
[6] *Id.* ¶ 96.

claim against CF General Partner for, at least generally, the same conduct as amplified in the breach of contract allegations—that the underwriting fees that CF General Partner paid were above market and not approved by CIM.[7] Finally, in the fourth count, the Plaintiffs bring a claim against CFLP for aiding and abetting CF General Partner's breach of fiduciary duty because CFLP is said to have given "substantial assistance and encouragement to the CF General Partner" in breaching its fiduciary duties.[8] Defendants have moved to dismiss the last three counts for failure to state a claim upon which relief can be granted.

First, Plaintiffs' unjust enrichment claim against CFLP is based upon the same conduct as the breach of contract claim against CF General Partner. Indeed, in describing their unjust enrichment claim, the Plaintiffs refer to underwriting fees "that violate the [CCRE LP Agreement]."[9] When an unjust enrichment claim is based upon the same conduct upon which a breach of contract claim is based, "Delaware courts . . . have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by

---

[7] *Id.* ¶ 101.
[8] *Id.* ¶ 108.
[9] *Id.* ¶ 96.

contract."[10] Moreover, when the standard is set by contract, "contractual remedies remain the sole remedies even if the claim of unjust enrichment is alleged against a party who is not a party to the contract."[11] Accordingly, Plaintiffs' claim for unjust enrichment does not survive the reasonable conceivability standard of Court of Chancery Rule 12(b)(6).[12]

Second, CF General Partner argues that Plaintiffs' fiduciary duty claim must be dismissed because it is duplicative of their contract claim. Here, the fiduciary duty claim exists in parallel with the contract claim. Plaintiffs' efforts to extend the scope of the fiduciary duty claim beyond the contract claim fail because any relief which they obtain would be the same under both theories and adding

---

[10] *Nemec v. Shrader*, 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009), *aff'd*, 991 A.2d 1120 (Del. 2010).

[11] *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2013 WL 5863010, at *15 (Del. Ch. Oct. 31, 2013). A plaintiff "cannot use a claim for unjust enrichment to extend the obligations of a contract to [defendants] who are not parties to the contract." *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009). *See also Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *19–20 (Del. Ch. Sep. 18, 2014).

[12] In considering a motion to dismiss, the Court must accept the truth of Plaintiffs' allegations and may only dismiss the claim if it is not reasonably conceivable that Plaintiff could prevail. *See, e.g.*, *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

adjectives to a breach of contract claim does not change its fundamental nature. For example, if Defendants overcharge CCRE, recovery would be the same whether Defendants' conduct amounted to breach of contract, willful misconduct, or grossly negligent conduct. Delaware law "does not allow fiduciary duty claims to proceed in parallel with breach of contract claims unless" there is an "independent basis for the fiduciary duty claims apart from the contractual claims."[13] Plaintiffs' claims are defined by the CCRE LP Agreement. The fiduciary duty claim that they allege has no basis independent of their contract claim.

This treatment of corresponding fiduciary duty and contract claims reflects Delaware's perception that allowing "a fiduciary duty claim to coexist in parallel with [a contractual] claim, would undermine the primacy of contract law over fiduciary law in matters involving . . . contractual rights and obligations."[14] Indeed, here, the Plaintiffs' fiduciary duty claim depends upon the specific

---

[13] *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015). *See also Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006).

[14] *Grayson v. Imagination Station, Inc.*, 2010 WL 3221951, at *7 (Del. Ch. Aug. 16, 2010) (alterations in original) (internal quotation marks omitted).

contractual agreement between Plaintiffs and CF General Partner.  In sum, because the fiduciary duty claim duplicates the contract claim, it must give way to the contract claim.[15]

Finally, Plaintiffs assert a claim against CFLP for aiding and abetting a breach of fiduciary duty by CF General Partner.  With the dismissal of the fiduciary duty claim against CF General Partner, there is no "knowing participation in the [fiduciary duty] breach" by CFLP.[16]  In short, because Plaintiffs have been unable to state a claim for breach of fiduciary duty, they have likewise not stated a claim for aiding and abetting the breach.  Thus, Plaintiffs' aiding and abetting claim against CFLP is also dismissed.

---

[15] With this conclusion, it is not necessary to address the question of whether CF General Partner owed any fiduciary duties.  Section 10.1(a) of the CCRE LP Agreement provides that "to the extent that, at law or in equity, [CF General Partner] has duties (including fiduciary duties) and liabilities relating thereto . . . such duties are hereby replaced by the standards and duties set forth [elsewhere in the CCRE LP Agreement]."  Thus, the fiduciary duties which might otherwise have burdened CF General Partner have been replaced by a contractual standard that uses language that accurately describes fiduciary duties.  In this context, however, any liability which might be charged to CF General Partner is in the nature of contract, not in the nature of common law fiduciary duty.

[16] *See, e.g.*, *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).

Accordingly, the Defendants' Motion to Dismiss Counts II–IV of the Verified Complaint is granted.

\* \* \*

CIM has moved to compel discovery. Specifically, it seeks an order requiring the Defendants (i) to respond in full to Document Request No. 17 and Interrogatory Nos. 32 and 33; (2) to provide information responsive to Interrogatory No. 6 on a transaction-by-transaction basis with respect to CCRE securitizations; and (3) to produce documents responsive to Plaintiffs' First Request for Production of Documents and Plaintiffs' First Set of Interrogatories.

Discovery, to an extent, is ongoing, and CF General Partner and CFLP have produced a significant number of documents since the motion to compel was filed, and there is no current need to address the status of the production of documents generally.[17] That leaves Request for Production No. 17, and Interrogatory Nos. 6, 32, and 33.

The Court will address the issues in the order presented by the parties at oral argument. The first involves Interrogatory 6 and its request for information about

---

[17] Tr. of Oral Arg. (Dec. 7, 2015) ("Tr.") 30–31.

the services provided by CF & Co., a CFLP affiliate, in connection with the CCRE

securitizations. Defendants have proposed an approach to provide the requested

information.[18] At issue is not only the scope of the discovery request, but also the

"granularity" of the response. Although leaving discovery matters in a state of

limbo is not typically desirable, the most reasonable approach here would be to

allow the Defendants to carry out their commitment and then afford CIM a chance

to review the discovery which it receives.[19] At that point, the lines of disagreement

should be more readily identified.

The other major topic of disagreement involves benefits accruing to CF &

Co. that are tied to CCRE. Document Request No. 17 and Interrogatory Nos. 32

and 33 all touch upon how broadly CIM should inquire into benefits that CF & Co.

may obtain because of its relationship with CCRE. For example, there is

---

[18] Tr. 39–43.

[19] Plaintiffs worry, not without cause, that the plan set forth by Defendants may turn out not to be effective. *See* Tr. 55. That, however, is a question better answered after Defendants have carried out their proposal. Similarly, it may be that Plaintiffs are correct, Tr. 58–59, that it will be necessary for Defendants to provide information on a securitization-by-securitization basis. However, Defendants have committed to providing a response to Interrogatory No. 6 on a securitization-by-securitization basis. Tr. 59–60. Whether that turns out to be sufficient or not remains to be seen.

secondary trading, but the secondary trading that CF & Co. performs has nothing

to do with the CCRE LP Agreement and its compensation provisions which are put

at issue by the Complaint.[20]   It may turn out that this type of discovery becomes

necessary based on how the Defendants pursue their counterclaims,[21] but this

additional discovery cannot be said at this point to be fairly related to what this

case is about.[22]

There are a few other sources of income to CFLP or its affiliates that may be

attributed to CCRE.  For example, there is an equity stake (and a carried interest or

promote) and a support services component.  Support services, a separate aspect of

---

[20] CF & Co. trades in the secondary market for its own account and uses its own capital.  CCRE is not a party to these trades.  Indeed, CCRE is not involved in the secondary trading process.  More to the point, CCRE has no obligation to provide compensation for those services.

[21] Plaintiffs understandably are skeptical about Defendants' representations with respect to certain claims that may lurk in the counterclaims or whether they are part of the factual narrative.  *See, e.g.*, Tr. 55–56.  If Plaintiffs turn out to be correct, then discovery and these certain additional topics may well become unavoidable.

[22] Defendants have committed that they are not putting the secondary trading business at issue with respect to justifying the fees that were charged for the securitization work.  Tr. 46–47.  The perception of the scope of the dispute among the parties will likely evolve, and the appropriateness of this discovery may become more apparent later.

the relationship, are governed by a different section of the CCRE LP Agreement, Section 9.8(a).

The third source of financial interrelatedness is the topic of this dispute and involves the underwriting and financial advisory services addressed in Section 9.8(b) of the CCRE LP Agreement. Discovery into these benefits is appropriate, but discovery into the other potential benefits is not.[23] The Court must focus on what the contract provides in terms of how CCRE relates to CFLP and its affiliates for the provision of various services. The profits or benefits that CFLP and its affiliates may draw from a relationship with CCRE, other than those related to the specific allegations in the Complaint, are simply not material or likely to lead to the discovery of admissible evidence. That CFLP and its affiliates may profit from the relationship with CCRE does not inform the question of whether the fees charged for the work covered by Section 9.8(b) of the CCRE LP Agreement is reasonable or unreasonable, cheap or expensive.[24] In short,

---

[23] Again, this conclusion is based upon the Court's current understanding of the nature of the dispute. *See supra* notes 20–22.

[24] In addition, to the extent there is a debate about intercompany payments, that issue does not seem to be fairly raised in the Complaint.

discovery into benefits, or profits, or compensation not dealing with the fees that have been put at issue in this litigation is not appropriate.[25]

In sum, Plaintiffs' Motion to Compel is denied with respect to Interrogatory No. 6 in order to allow the Defendants an opportunity to carry out their commitment to provide a response on a securitization-by-securitization basis, and denied with respect to Document Request No. 17 and Interrogatory Nos. 32 and 33 to the extent that they seek information related to payments accruing to CFLP other than compensation related to underwriting and financial advisory services, recognizing that should such payments eventually become relevant, the Court may revisit these requests.

\* \* \*

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:     Register in Chancery-K

---

[25] As the Court has indicated, as the case evolves, some of the discovery for which there is no current apparent purpose may become relevant.   Perhaps the motion to compel was premature, and perhaps the need for the discovery has not been developed in a fulsome fashion.   Thus, Plaintiffs may renew their motion for discovery based on either how this case develops or the results of the Defendants' undertaking set forth above. *See supra* notes 19–22 and accompanying text.