**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| VERDANTUS ADVISORS, LLC, | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0194-KSJM |
| | ) | |
| PARKER INFRASTRUCTURE | ) | |
| PARTNERS, LLC, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| THE JEFFREY A. PARKER TRUST, | ) | |
| THE CARL P. FEINBERG REVOCABLE | ) | |
| TRUST, JEFFREY A. PARKER, and | ) | |
| CARL P. FEINBERG, | ) | |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL G. PHILLIPS, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

**ORDER RESOLVING PARTIAL MOTION TO DISMISS COUNTERCLAIMS**[1]

1.    Verdantus Advisors LLC ("Verdantus") is a member of Parker Infrastructure Partners, LLC (the "Company"). The Parker Infrastructure LLC Agreement (the "LLC Agreement") governs the relationship between the Company and its four members: Verdantus; The Jeffrey A. Parker Trust (the "Parker Trust"); The Carl P. Feinberg

---

[1] The facts are drawn from the Verified Amended Counterclaim and documents it incorporates by reference. C.A. No. 2020-0194-KSJM, Docket ("Dkt.") 61, Verified Am. Counterclaim ("Am. Countercl.").

Revocable Trust (the "Feinberg Trust"); and Beverly Scott and Associates, LLC. Jeffrey Parker, Carl Feinberg, and Beverly Scott are the Company's Managers.

2. In July 2017, Verdantus entered into a Consultant Agreement with the Company. Verdantus is owned by Michael G. Phillips, who was a Manager of the Company until he was removed in November 2019. After Phillips was removed, the Company failed to make payments to Verdantus under the Consultant Agreement. Verdantus filed suit against the Company, the Parker Trust, and the Feinberg Trust.

3. In response, the Company stipulated to judgment against it as to Count I for breach of the Consultant Agreement. The other defendants moved to dismiss the remaining claims, Counts II through IV, and the court granted that motion by an Order dated October 8, 2020.[2]

4. On October 20, 2020, the Company, Feinberg, the Feinberg Trust, Parker Infrastructure, and the Parker Trust (collectively, "Counterclaim-Plaintiffs") filed counterclaims against Verdantus and Phillips (together, "Counterclaim-Defendants") for fee-shifting under the LLC Agreement. Counterclaim-Plaintiffs amended their pleading on April 21, 2021. As amended, the Counterclaims include three Counts:

- In Counterclaim I, against both Verdantus and Phillips, Counterclaim-Plaintiffs seek fees incurred in connection with their successful motion to dismiss Counts II through V pursuant to a fee-shifting provision of the LLC Agreement.

---

[2] *Verdantus Advisors, LLC v. Parker Infrastructure P'rs, LLC*, 2020 WL 5951368 (Del. Ch. Oct. 8, 2020).

- In Counterclaim II, against Verdantus, Counterclaim-Plaintiffs seek a declaration that they are entitled to fees incurred in connection with defending Count I.

- In Counterclaim III, against Verdantus and Phillips, Counterclaim-Plaintiffs seek to pierce the corporate veil to hold Phillips liable for any judgment obtained against Verdantus in Counterclaims I and II.[3]

5. On April 27, 2021, Phillips moved to dismiss Counterclaim I and both Phillips and Verdantus moved to dismiss Counterclaim III under Court of Chancery Rule 12(b)(6).[4] The motion was fully briefed on June 24, 2021, and the court held oral argument on January 14, 2022.[5]

6. "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[6] On a Rule 12(b)(6) motion, the court accepts "all well-pleaded factual allegations in the Complaint as true, [and] accept[s] even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim."[7] The court "is not, however, required to accept as true conclusory allegations without specific supporting factual allegations."[8] The court draws "all reasonable

---

[3] Although both Verdantus and Phillips are named as defendants in Counterclaim III, Am. Countercl. ¶¶ 26–42, Counterclaim-Plaintiffs clarified during oral argument that the veil-piercing claim is asserted against Phillips. Dkt. 75 ("Oral Arg. Tr.") 18:12–24.

[4] Dkt. 62; Dkt. 65 at 10.

[5] Oral Arg. Tr.

[6] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[7] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[8] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (internal quotation marks omitted).

inferences in favor of the plaintiff, and den[ies] the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[9]

7. Phillips is not a party to the LLC Agreement at issue in Counterclaim I, and Counterclaim-Plaintiffs concede that they do not seek to hold Phillips liable under contract theories.[10] Their only theory of liability against Phillips is Counterclaim III for veil-piercing. Because Counterclaim I as to Phillips rises and falls with Counterclaim III, this analysis addresses Counterclaim III only.

8. Veil piercing is a tough thing to plead and a tougher thing to get, and for good reason.[11] Delaware is in the business of forming entities, and so "Delaware public policy does not lightly disregard the[ir] separate legal existence[.]"[12] The factors a court considers when determining whether to pierce the corporate veil are "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent;

---

[9] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor*, 812 A.2d at 896–97).

[10] Oral Arg. Tr. 17:23–24 ("Count I as it pertains to Phillips is dependent on the success of Count III").

[11] *See eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *27 (Del. Ch. Sept. 30, 2013, *revised*, Oct. 4, 2013) ("This Court will disregard the corporate form only in the 'exceptional case.'" (citation omitted)); *Case Fin., Inc. v. Alden,* 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) ("This Court will disregard the corporate form only in the 'exceptional case.'" (citation omitted)); *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008) ("It is only the exceptional case where a court will disregard the corporate form . . . ." (quoting *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990))).

[12] *Doberstein v. G-P Indus., Inc.,* 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015) (internal quotation marks omitted); *see also Wallace v. Wood,* 752 A.2d 1175, 1183 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task." (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.,* 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)).

(3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder."[13] Courts have also required a veil-piercing claim to demonstrate "an overall element of injustice or unfairness."[14]

9. Counterclaim-Plaintiffs do not come close to adequately alleging a claim for veil-piercing. Counterclaim-Plaintiffs argue that veil-piercing is appropriate because Phillips is the sole owner of Verdantus and that he observed few if any corporate formalities. But that allegation could be said of most single-member LLCs, particularly given the few statutorily mandated formalities imposed on those entities. This is not the exceptionally rare stuff of veil-piercing.

10. Counterclaim-Plaintiffs also argue that Verdantus is inadequately capitalized, and that Phillips has siphoned funds from Verdantus. The main allegations supporting this theory are that Verdantus "has never maintained any reserves or operating capital"[15] and that "Verdantus was . . . unable to pay its obligations, including . . . its obligations owed

---

[13] *Doberstein,* 2015 WL 6606484, at *4 (internal quotation marks omitted).

[14] *Id.* (internal quotation marks and citations omitted); *see also U.S. v. Golden Acres, Inc.,* 702 F. Supp. 1097, 1104 (D. Del. 1988) (noting that "no single factor could justify a decision to disregard the corporate entity, but . . . some combination of them [is] required, and . . . an overall element of injustice or unfairness must always be present") (citation omitted); *see also In re Sunstates Corp. S'holder Litig.,* 788 A.2d 530, 534 (Del. Ch. 2001) (noting that "to pierce the corporate veil based on an agency or 'alter ego' theory, 'the corporation must be a sham and exist for no other purpose than as a vehicle for fraud'" (quoting *Wallace*, 752 A.2d at 1184)).

[15] Am. Countercl. ¶ 30.

5

pursuant to the LLC Agreement, or even its own attorneys' fees."[16] But none of Counterclaim-Plaintiffs' allegations suggest that Verdantus funneled monies up to Phillips in an effort to avoid payment on a possible future judgment awarding attorneys' fees.[17] And Counterclaim-Plaintiffs' argument that Verdantus lacks assets is unavailing. Indeed, Verdantus filed this action in pursuit of an asset—its fees due from the Company under the Consultant Agreement.[18]

11. For all of these reasons, Counterclaim III fails to state a claim. Because Counterclaim III fails to state a claim, Counterclaim I too fails to state a claim against Phillips by Counterclaim-Plaintiffs' own admission. Counterclaim-Defendants' motion to dismiss Counterclaims I as to Phillips and Counterclaim III in its entirety is GRANTED.

*/s/ Kathaleen St. J. McCormick*
Chancellor Kathaleen St. J. McCormick
Dated: March 2, 2022

---

[16] *Id.* ¶ 32.

[17] Counterclaim-Plaintiffs cite *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Gp. Glob. I LLC*, 2019 WL 148454 (D. Del. Jan. 9, 2019) and *Gadsden v. Home Pres. Co., Inc.*, 2004 WL 485468 (Del. Ch. Feb. 20, 2004), but those cases are distinguishable. In *Starwood*, the siphoning of funds happened after there was an order directing the defendant to "cease making payments to any third parties," when the company was admittedly insolvent, and as part of a scheme that was intended to leave the company unable to pay a prospective award. 2019 WL 148454, at *2. None of these allegations are present in this case. In *Gadsden*, the court pierced the corporate veil and held the sole stockholder/employee liable for breach of contract where the corporation sold workmanship warranties but the stockholder made sure that it never had title to any cash or assets to make good on those warranties. 2004 WL 485468, at *5. Those facts are also not present here.

[18] Philips also argues that veil-piercing theories should be unavailable or extraordinarily limited in the alternative entity context. *See* Dkt. 65 at 21–22; Dkt. 68 at 1–2. Given the paucity of the allegations pled in support of veil-piercing, this decision need not and thus does not wade into the rich area of law and policy implicated by this argument.