**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 14, 2026

Angela Okafor Carlisle
11795 SW 273rd Street
Homestead, FL 33032

Jason C. Powell
Thomas J. Reichert
Laurel A. Lalone
The Powell Firm, LLC
1813 N. Franklin Street
Wilmington, DE 19802

> Re: *Angela Okafor Carlisle v. Rone Everett,*
> C.A. No. 2023-0077-LM (KSJM)

Dear Ms. Carlisle and Counsel:

This letter grants Respondent Rone Everett's motion to dismiss Petitioner Angela Okafor Carlisle's petition for removal of Everett as personal representative of the estate of Sharif Kihill Green.[1]

## I. FACTUAL BACKGROUND

The facts are drawn from the allegations in the Petition for Removal.[2] At this stage, the court assumes that the allegations in the Petition are true and draws reasonable inferences in favor of Carlisle.[3]

This case concerns the Estate of Sharif Kihill Green, who died on June 18, 2022. On June 1, the Philadelphia Orphans' Court provided Green and Everett with

---

[1] C.A. No. 2023-0077-LM, Docket ("Dkt.") 17.

[2] Dkt. 1 (Pet. for Removal).

[3] *Wallace ex rel. Cencom Cable Income P'rs II, L.P. v. Wood*, 752 A.2d 1175, 1179 (Del. Ch. 1999).

a marriage license. The license authorized Green and Everett to marry on or after June 4. The license also stated that it was "valid only in Pennsylvania."[4] On June 3, Green was admitted to a hospital in New Jersey.[5] He remained in the hospital from June 3 until he died.[6] Green and Everett executed the marriage certificate on June 6. Everett's stepfather witnessed it.[7] The certificate states that the marriage occurred in Philadelphia, although Green was hospitalized in New Jersey.[8]

Everett opened Green's estate as Green's wife with the Delaware Register of Wills on August 26, 2022, and became the estate's personal representative.[9]

Green's mother, Carlisle, does not recognize Green's marriage to Everett and seeks to serve as the personal representative of Green's estate. On December 14, 2022, Carlisle filed a letter with the Register of Wills contesting Everett's appointment.[10] She claimed that Everett's marriage to Green did not occur due to Green's location on the date of their marriage.[11] To investigate Carlisle's claims, the Chief Deputy of the Register of Wills contacted the Philadelphia County Clerk of the

---

[4] Dkt. 39 ("Pet'r's Opening Br."), Ex. D (Marriage License).

[5] Pet. for Removal ¶ 7.

[6] *Id.* ¶ 8.

[7] Pet'r's Opening Br., Ex. E (Marriage Certificate).

[8] *Id.*

[9] Pet'r's Opening Br., Ex. F.

[10] New Castle County Register of Wills Case No. 181736 Dkt. ("ROW Dkt.") 5.

[11] *Id.*

Orphans' Court, Tiffany Gordon.[12]  Gordon confirmed on December 15 that the Orphans' Court had the actual marriage certificate on file.

The Clerk of the Orphans' Court Division responded in a letter dated December 22, received on December 28, and uploaded to the docket on January 3, 2023.  The letter stated:

> A Marriage License application was completed and approved by our office for [Green and Everett] on June 1, 2022, during a Zoom meeting.  *The applicants indicated that Mr. Green was hospitalized at the time and provided proper documentation for the Marriage License Clerk to conduct a Zoom Sick Call.*
>
> Proper documentation would have included a completed application and a Doctor's Note from the attending physician indicating the hospitalized applicant is of sound mind and body to make their own decision and has a diagnosis of a terminal illness.  The Doctor's Note must be on the physician's letterhead and signed by the physician.
>
> We are searching for our paper file on this matter so that we may confirm the exact documentation that was provided.[13]

Later, a Philadelphia Assistant Solicitor confirmed that the Orphans' Court received and accepted the fully executed marriage certificate.[14]

The court takes judicial notice of the Clerk of the Orphans' Court Division's official position stated by the Philadelphia Assistant Solicitor in the December 22

---

[12] ROW Dkts. 6–8; Pet'r's Opening Br., Ex. I.

[13] ROW Dkt. 11 (emphasis added).

[14] ROW Dkt. 12.

letter: that Green and Everett had the required documentation for the Zoom Sick Call and that the Orphans' Court properly received the marriage certificate.[15]

Carlisle filed this action to remove Everett as personal representative on January 24, 2023, alleging that the marriage was fraudulent because Green was hospitalized in New Jersey on the day of the marriage ceremony and thus could not have married Everett in Philadelphia, as the certificate stated.[16]

Everett moved to dismiss the petition, and the Magistrate Judge heard argument on October 2, 2023. During argument, the parties requested leave to submit supplemental briefing on an issue raised by the Magistrate concerning the implications of the Full Faith and Credit Clause on the court's subject matter jurisdiction.[17] Supplemental briefing concluded on November 20, 2023.

In her Final Report dated January 31, 2024, the Magistrate Judge recommended that the Motion to Dismiss under Court of Chancery Rule 12(b)(1) be granted for lack of subject matter jurisdiction.[18] Carlisle filed exceptions on February

---

[15] Delaware Rule of Evidence 201(b)(2) allows the court to take notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 311 A.3d 773, 799–802 (Del. 2023) (quoting D.R.E. 201(b)(2)).

[16] Pet. for Removal ¶ 10.

[17] Dkt. 38 at 45.

[18] Dkt. 34.

2, 2024, arguing that this Court has subject matter jurisdiction over the action to remove Everett as a personal representative of the estate.[19]

On August 14, 2024, I sustained the exceptions based on the equitable relief sought by Petitioner and held that I would preside over all further proceedings.[20] But because the jurisdictional question left several issues unresolved, I granted leave to the parties to address "whether Carlisle has standing to challenge Green's marriage to Everett . . . on the basis of fraud."[21]

The parties completed briefing this issue on November 15, 2024.[22] Midway through briefing, counsel for Carlisle moved to withdraw.[23] I granted the motion on December 30, 2024.[24] I held oral argument on September 4, 2025.[25] I then stayed this case pending resolution of the appeal of the court's ruling in *LaFon v. Felmlee*, which involved similar issues.[26] The Supreme Court affirmed the court on January

---

[19] Pet.'s Opening Br. at 7–13; *see* Dkt. 41 ("Resp't's Answering Br.") at 14–17.

[20] *Carlisle v. Everett*, 2024 WL 3813249, at *2 (Del. Ch. Aug. 14, 2024).

[21] *Id.* at *3.

[22] Dkt. 58.

[23] Dkt. 52.

[24] Dkt. 63.

[25] Dkt. 67.

[26] 2025 WL 1251000 (Del. Ch. Apr. 29, 2025); Dkt. 68.

27, 2026.[27]  I gave the parties the option to submit supplemental briefing on *LaFon*.[28]

The parties completed supplemental briefing on February 25, 2026.[29]

## II.    LEGAL ANALYSIS

Everett moves to dismiss the Petition under Court of Chancery Rule 12(b)(6). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[30]  When considering a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[31]  The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[32]

Everett argues that Carlisle lacks standing under 13 *Del. C.* § 1506 (the "Act") because she is not among those authorized to challenge Green's marriage.[33]

---

[27] *LaFon v. Felmlee*, --- A.3d ---, 2026 WL 205261 (Del. Jan. 27, 2026) ["*LaFon II*"].

[28] Dkt. 69.

[29] Dkt. 73.

[30] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[31] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[32] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[33] Dkt. 51 at 8–12.

According to Everett, the Act provides the exclusive grounds for obtaining an annulment. The Act prohibits annulment after the death of either spouse except in certain limited circumstances. The Act also limits the persons who may petition for an annulment. "Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is . . . appropriate for the exercise of the court's judicial powers."[34]

This court recently addressed similar issues in *LaFon*. There, a father challenged the validity of his late son's marriage for purposes of his son's estate administration.[35] The evidence at trial revealed that the putative spouses wed in a ceremony, and everyone treated them as married. But the decedent's mother—one of the two required witnesses—admitted she did not attend the ceremony.[36] The father challenged the marriage on the ground that the two witnesses listed on the marital certificate did not attend the ceremony as 13 *Del. C.* § 106(a)(4) required.[37] The father also argued that the Act did not limit his ability to challenge the marriage because no marriage occurred.[38]

---

[34] *Dover Hist. Soc'y v. Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003).

[35] *LaFon II*, 2026 WL 205261, at *2.

[36] *Id.* at *1.

[37] *Id.* at *1–2.

[38] *Id.*

7

The Court of Chancery treated the petitioner's request for declaratory relief as, in substance, a request to annul the marriage.[39] It reasoned that the Act strictly limits who may seek annulment.[40] The trial court denied the petitioner's requested annulment because he did not fit within the limited class of people who may seek an annulment.[41]

The Delaware Supreme Court affirmed based on a slightly different analytical framework. The decision employed a two-step analysis. First, the Court addressed whether a valid marriage existed despite a clear defect in the marriage formalities.[42] It held that the absence of a statutory formality does not render a marriage void where the parties participated in a ceremony, obtained a license, and acted in good faith with the belief that they were married.[43] Second, having concluded that a valid marriage existed, the Court held that any challenge must proceed under the Act.[44]

---

[39] *LaFon v. Felmlee*, C.A. No. 2023-0998-LM, at 10 (Del. Ch. Apr. 14, 2025) (TRANSCRIPT).

[40] *Id.* at 11:18–22 ("Considering the plain text of Section 1506(b), I have difficulty reaching any takeaway other than that the General Assembly has expressed a clear intent to restrict challenges to marriages after the death of a party to the marriage.").

[41] *Id.*

[42] *LaFon II*, 2026 WL 205261, at *3.

[43] *Id.* at *6.

[44] *Id.*

Enforcing the Act strictly, the Court held the petitioner could not annul the marriage because "he was not within the class of persons entitled to seek annulment."[45]

Here, the two-step framework of *LaFon* prevents Carlisle from effectively annulling Green and Everett's marriage. Unlike *LaFon*, Green and Everett's marriage did not contain a statutory defect. The pair complied with Pennsylvania's marriage laws and no challenge on this basis has been pled. They obtained a doctor's note and a valid marriage ceremony was conducted using Zoom, which the Clerk of the Orphans' Court Division confirmed. This court gives deference to Pennsylvania's marital decrees.[46] Further, the parties' prior conduct indicates good faith. There is no challenge to whether the parties intended to marry. Nor is there any dispute that their relationship spanned decades and they had a child together. It is not reasonably conceivable, therefore, that Green and Everett's marriage was invalid.

Because the marriage is valid, Carlisle's challenge must proceed under the Act. The Act does not provide Carlisle—a parent of decedent Green—standing to challenge the validity of Green's marriage to Everett. Parents of a decedent are not among the classes of people with standing under the Act.[47] Indeed, Petitioner admits that she

---

[45] *Id.*

[46] *See Matter of Estate of Necastro*, 1990 WL 105620, at *1 (Del. Ch. July 25, 1990) (upholding a common-law marriage decree which could not have been entered into under Delaware law).

[47] *See* 13 *Del. C.* § 1506.

"cannot seek relief regarding an annulment action because she is not a party to the

marriage and is not the legal representative of the Decedent."[48]  Petitioner thus does

not have standing to challenge Everett's marriage.

## III.  CONCLUSION

Respondent's Motion to Dismiss is GRANTED.  It is so ordered.

Very truly yours,

*/s/ Kathaleen St. J. McCormick*

Chancellor

---

[48] Dkt. 22 at 12.