# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ANEW VENTURES II, LLC,               )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )        C.A. No. N25C-05-094 MAA CCLD
                                     )
TERRA GLOBAL INVESTMENT              )
MANAGEMENT, LLC and TERRA            )
BELLA NBS CARBON POOL, LLC,          )
                                     )
                    Defendants.      )

Submitted: August 28, 2025
Decided: November 14, 2025

## MEMORANDUM OPINION

Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1),
or in the Alternative, Rule 12(b)(3):
**GRANTED**.

Brian M. Rostocki, Esquire (*Argued*), and John Miraglia, Esquire, of REED SMITH LLP, Wilmington, DE, and John C. Scalzo, Esquire, Zachary B. Kaye, Esquire, and Casey J. Olbrantz, Esquire, of REED SMITH LLP, New York, NY. *Attorneys for Plaintiff*.

William E. Green, Jr., Esquire, and Timothy S. Spangler, III, Esquire, of HALLORAN FARKAS + KITTILA LLP, Wilmington, DE, and Philip J. Wang, Esquire (*Argued*), George Chikovani, Esquire, and Dannielle M. Campbell, Esquire, of PUTTERMAN | YU | WANG LLP. *Attorneys for Defendants*.

**Adams, J.**

This action arises from a failed carbon credit investment venture, in which a buyer alleges it was deprived of its contractual right to exit a "carbon credit pool" developed and managed by two of the seller's subsidiaries. The story spans global carbon markets, major investments, shifting industry standards, and a sharply deteriorating business relationship.

The issue pending before the Court is whether the forum selection clause in a securities purchase agreement binds the non-signatory subsidiaries. The Court finds that it does not. Rather, both the subsidiaries and the buyer are bound by the arbitration clause in a separate acquisition and management agreement. This action is therefore dismissed for arbitration.

## BACKGROUND[1]

### A. Carbon Credits for Capital

The dispute centers on the voluntary carbon market, where private and public entities buy carbon credits to offset greenhouse gas emissions, often for sustainability or regulatory purposes.[2] A key type of credit is the Verified Emission Reduction and/or Removal Unit ("VERR Unit"), representing a certified reduction

---

[1] These facts are drawn from the complaint and the documents integral to it, and the record developed at the August 28, 2025 hearing. Docket Item ["D.I."] 27. Citations to the hearing transcript are in the form "Tr. #." Citations to the related hearing in the Court of Chancery are in the form "Ch. Tr. #." Tr. of 7-11-2025 Oral Arg. and Rulings of the Court on Pl.'s Mot. for Emergency TRO, *Anew Ventures II, LLC v. Terra Global Invest. Mgmt., LLC*, C.A. No. 2025-0774-MAA ["*Inj. Action*"] (Del. Ch. July 11, 2025), ECF No. 76722713 (of which this Court takes judicial notice pursuant to D.R.E. 202(d)(1)(C)).
[2] Compl. ¶ 13.

1

or removal of one metric ton of $CO_2$, with certification standards enforced by third-party organizations.[3]  VERR Units can originate from diverse projects: renewable energy, forestry (notably, "REDD+" initiatives to reduce deforestation), industry, agriculture, waste, or even technology-based activities like direct air capture.[4]

Consumers seek VERR Units through brokers, online platforms, or direct purchases, with transactions recorded on public registries and "retirement" of units publicly signifying emissions offset.[5]  Demand for these credits is shaped by project quality, location, certification, and ability to meet evolving standards—especially for forest-based projects, perceived integrity and adherence to evolving market requirements are paramount.[6]

### B. The Pool, the Pact, and the Parents

Anew Ventures II, LLC ("Anew") is a wholly owned subsidiary of Anew Climate, LLC, which grew from a merger of two climate industry leaders, boasting extensive expertise in environmental commodities and carbon markets.[7]

---

[3] *Id.* ¶ 14.
[4] *Id.* ¶ 15.
[5] *Id.* ¶ 16.
[6] *Id.* ¶ 17.
[7] *Id.* ¶ 18.  Anew is a Delaware limited liability company headquartered in Houston, Texas.  *Id.* ¶ 9.

Terra Global Capital, LLC ("Terra Parent"), is an Oakland-based company with an international footprint in nature-based solution development, climate finance, and land-use greenhouse gas quantification.[8]

Terra Parent provides advisory services and manages investments and carbon transactions through its affiliate, Terra Global Investment Management, LLC ("Terra Global").[9] In connection with a contemplated securities purchase agreement, Terra Parent formed Terra Bella NBS Carbon Pool, LLC (with Terra Global, the "Terra Subs," collectively, the "Terra Group") as a special purpose vehicle.[10]

In late 2021, the parties began contemplating a partnership or acquisition, with Anew believing the Terra Group possessed a deep pipeline of advanced carbon projects around the world—many allegedly close to generating VERR Units.[11] During these discussions, the Terra Group presented Anew with extensive information on dozens of potential projects, most in advanced stages and mainly REDD+ operations across South America, Africa, and Southeast Asia.[12] The Terra Group expressed that several were ready (with contracts already in place) to generate VERR Units shortly after investment.[13]

---

[8] *Id.* ¶¶ 10, 19.
[9] *Id.* ¶¶ 10, 19.
[10] *Id.* Terra Subs are California limited liability companies headquartered in Oakland, California. *Id.* ¶ 10.
[11] *Id.* ¶¶ 20–21.
[12] *Id.* ¶ 21.
[13] *Id.*

Initially, Anew explored acquiring a controlling stake in the Terra Group, but Terra Parent proposed instead that Anew (1) acquire a minority stake with an option for majority ownership in the future and (2) become the "anchor tenant" in a newly created VERR Unit investment pool that the Terra Subs would operate (the "Pool").[14]

The Pool's pitch: participants, led by Anew, would commit capital, which the Terra Subs would use to secure and develop the pipeline of projects, generating discounted VERR Units for all pool participants.[15] The Terra Subs stressed that Anew's involvement would act as an endorsement that would attract further investors, aiming for $100 million plus in overall capital.[16] Enticed by this model and the opportunity for future control, Anew agreed.[17]

On June 10, 2022, Anew and Terra Parent entered a Securities Purchase Agreement (the "SPA"), through which Anew invested $10 million in Terra Parent, gained a minority equity stake, and was granted an option for future control (the "Transaction").[18] Associated "Transaction Documents" were executed, including the key Acquisition and Management Agreement (the "AMA"), which governed the Pool.[19] Under these arrangements, Anew made a nine-figure capital commitment to

---

[14] *Id.* ¶ 23.
[15] *Id.* ¶ 24.
[16] *Id.* ¶ 25.
[17] *Id.* ¶ 26.
[18] *Id.* ¶ 27; MTD Ex. 1 ["SPA"].
[19] Compl. ¶¶ 28–29 ("Also on June 10, 2022, pursuant to the SPA, the parties entered the SPA's several associated "Transaction Documents included an Equity Option Agreement, Master ERPA,

the Pool and paid more than two million dollars in startup and management fees.[20]

Both parties publicly celebrated the Transaction, with press releases touting ambitions for significant climate impact and mutual respect for expertise.[21]

The SPA, governed by Delaware law, contains a forum selection clause (the "Delaware Forum Provision"):

> ANY LEGAL SUIT, ACTION, OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF DELAWARE IN EACH CASE LOCATED IN THE CITY OF DOVER AND COUNTY OF KENT, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION, OR PROCEEDING. . . . THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION, OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.[22]

The AMA structured the Pool as a regulated commodity pool with the Terra Subs as the operator.[23] Under the arrangement, the Terra Subs were to use buyer

---

Side Agreement, A&R Operating Agreement, AMA (defined in the SPA as the "Pooling Agreement"), RCA, and General Manager Agreement."); MTD Ex. 2 ["AMA"]. The AMA was amended and restated on February 13, 2024. Compl. ¶ 11.

[20] Compl. ¶ 29.

[21] Compl. ¶¶ 11, 30–31.

[22] SPA §§ 7.10(a)–(b).

[23] Compl. ¶ 32.

commitments to acquire projects from its pipeline, call capital, and deliver discounted VERR Units back to investors like Anew.[24] Critically, the AMA gave the Terra Subs considerable control but imposed a stringent "Reasonable and Prudent Operator" standard—the Terra Subs were contractually required to act "at all times" with the skill, prudence, foresight, and diligence that would be expected of a similarly situated, skilled operator under similar circumstances.[25]

Key Reasonable and Prudent Operator duties included sourcing projects, managing investments to acquire quality VERR Units, evaluating and responding to shifting market conditions (like evolving certification standards), prudent operational management, and timely, accurate reporting.[26] If the Terra Subs materially breached any duty, especially under the Reasonable and Prudent Operator standard, and if the breach was recurring or incurable, Anew could terminate the Pool relationship with no further obligation and pursue legal remedies for damages.[27]

---

[24] *Id.* ¶ 33.

[25] Compl. ¶¶ 35–39; AMA §§ 1.1, 8.1(b).

[26] Compl. ¶¶ 40–46; AMA §§ 3.1, 8.1(a)(v) & (xvii), 8.1(b)(ii), (iii) & (viii), 8.2(a)(i)–(iv); *id.* Schedule 4 § 4.

[27] Compl. ¶¶ 40–46; AMA § 16.5.

The AMA, governed by New York law, contains an arbitration clause (the "Arbitration Clause"):

> If the Parties are unable to settle any dispute arising out of or connected with this Agreement within 30 Business Days of one Party having sent written notification to another of the existence of the dispute, the matter in dispute shall be referred to and finally resolved by arbitration under the Rules of Arbitration of the International Chamber of Commerce, which rules are deemed to be incorporated by reference into this Section 20.[28]

## C. Litigation

On May 8, 2025, Anew brought this action against the Terra Subs seeking a breach-of-contract claim and declaratory relief (the "Complaint").[29] The Terra Subs then moved for dismissal, arguing the claims were subject to the Arbitration Clause in the AMA (the "Motion").[30] After the parties completed briefing on the Motion, Anew moved to strike the Terra Subs' reply or file a sur-reply to address new points introduced in it.[31] The Court permitted Anew to file a sur-reply.[32]

On the eve of Independence Day—just days before the close of briefing on the Motion—the Terra Subs initiated an emergency arbitration with the International Chamber of Commerce.[33] This led Anew to file an emergency temporary restraining

---

[28] AMA §§ 20(a) & 21.5.
[29] Compl. ¶¶ 81–87.
[30] D.I. 4 ["MTD"] at 20.
[31] D.Is. 11, 13, 23.
[32] D.Is. 24, 25 ["Sur-Reply"].
[33] Tr. 19:8–13; Ch. Tr. 6:3–11; *Inj. Action*, D.I. 1.

order in the Court of Chancery (the "Injunction Action").[34] This judicial officer was designated to oversee both cases. With arbitration set for July 18, the Court of Chancery held a hearing on July 11 and granted Anew's TRO, preventing the Terra Subs from proceeding with arbitration.[35] On August 28, the Court held oral argument in this action regarding the Motion.[36]

## DISCUSSION

The Terra Subs move to dismiss the Complaint, arguing the AMA's Arbitration Clause warrants dismissal under Superior Court Civil Rules 12(b)(1) or 12(b)(3).[37] Both 12(b)(1) and 12(b)(3) motions permit courts to assume the truth of the factual allegations in the complaint but also consider facts beyond the pleadings.[38] The plaintiff carries the burden of proving jurisdiction.[39]

---

[34] *Inj. Action*, D.I. 1. This judicial officer was designated to oversee both cases. *Id.* at D.Is. 6–7.
[35] *Id.* at D.Is. 11, 14–15, 17.
[36] D.Is. 25–27.
[37] Courts addressing motions to dismiss for arbitration have entertained motions under both Rule 12(b)(1) and 12(b)(3). *See BuzzFeed Media Ent., Inc. v. Anderson*, 2024 WL 2187054, at *4 (Del. Ch. May 15, 2024) ("Courts often entertain motions to dismiss in favor of arbitration under Rule 12(b)(1)); *Gandhi-Kapoor v. Hone Cap. LLC*, 307 A.3d 328, 340–41, 343 (Del. Ch. Nov. 22, 2023) (explaining that "Rule 12(b)(1) is a suitable vehicle for raising challenges to a court's subject matter jurisdiction in its strict sense, as well as for raising arguments about why a court should not exercise its jurisdiction"), *aff'd sub nom. CSC Upshot Ventures I, L.P. v. Gandhi-Kapoor*, 326 A.3d 369 (Del. 2024).
[38] *Appriva S'holder Litig., Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007); *Sun Life*, 206 A.3d at 265 (explaining the court "is not shackled to the non-moving party's complaint and is permitted to consider extrinsic evidence").
[39] *Channel PES Acq. Co., LLC v. Heritage-Crystal Clean, Inc.*, 2024 WL 3252166, at *4 (Del. Super. June 30, 2024) (first citing *Payne v. Samsung Elecs. Am., Inc.*, 2024 WL 726907, at *3 (Del. Super. Feb. 21, 2024); and then quoting *In re Proton Pump Inhibitors Prods. Liab. Litig.*, 2023 WL 5165406, at *5 (Del. Super. Aug. 11, 2023)).

8

The Terra Subs advance two theories in support of dismissal: (1) the Terra Subs "are not signatories to the SPA" and thus not subject to the Delaware Forum Provision; and (2) the AMA's Arbitration Clause compels dismissal of this action.[40]

**A. The Terra Subs are not bound by the SPA's Delaware Forum Provision.**

The Terra Subs argue that, as nonparties to the SPA, they are not bound by the SPA's Delaware Forum Provision.[41] The only signatories to the SPA are Anew and Terra Parent.[42] The SPA does not define the term "party," but does identify the Terra Subs as Terra Parent's subsidiaries.[43] The Court must first determine whether the Terra Subs are parties to the SPA. If they are not, the Court must then determine

---

[40] Tr. 8:23–9:2.

[41] After a careful review of the record, the Court finds the Terra Subs did not waive the argument that they are not party to the SPA. The Terra Subs did not raise the non-party issue in their opening brief. This omission, however, is understandable as the "main thesis" of the opening brief was that the AMA, not the SPA, applied to the claims in the Complaint. Op. Br. at 23–26; Tr. 4:7–18. In response, Anew argued the Terra Subs waived the right to argue that they were not party to the SPA by not addressing the non-party issue in their opening brief. D.I. 23 at 5; MTDSR at 1–2. In reply, the Terra Subs argued they were not bound by the Delaware Forum Provision because they were not parties to the SPA. Reply Br. at 2, 4–6. The Court then permitted Anew to file a sur-reply. D.Is. 23–25. While movants are typically barred from introducing new arguments in a reply brief that were not included in their opening brief, the "purpose of the reply brief is to respond to matters raised in the answering brief." *Camtech Sch. of Nursing & Tech. Scis. v. Del. Bd. of Nursing*, 2014 WL 604980, at *6 n.78 (Del. Super. Jan. 31, 2014) (cleaned up), *aff'd*, 100 A.3d 1020 (Del. 2014). "The point of the rule is to prevent sandbagging, not require movants to anticipate their opponents' arguments." *Acme Mkts., Inc. v. Oekos Kirkwood, LLC*, 2025 WL 2172302, at *4–5 (Del. Super. July 31, 2025) (citations omitted). Here, the Court finds the Terra Subs were responding to issues raised by Anew's Answering Brief rather than attempting to raise an argument for the first time on reply. Thus, the Terra Subs did not waive their ability to raise the non-party issue.

[42] *See generally* SPA.

[43] *Id.* Art. I, "NBS" ("NBS" means Terra Bella NBS Carbon Pool, LLC, a California limited liability company.") & "TGIM" ("TGIM" means Terra Global Investment Management, LLC, a California limited liability company, a wholly[]owned subsidiary of the Company.").

9

whether the Terra Subs as nonsignatories are subject to the SPA's Delaware Forum Provision.[44]

    1.   *The Terra Subs are not party to the SPA.*

"As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions."[45] Anew admits the Terra Subs are not signatories to the SPA.[46] Still, Anew argues the broad interpretation of "party" in the Delaware Forum Provision suggests that the drafters intended for the SPA "to govern ***any*** disputes concerning Transaction Documents between ***any*** parties bound to the SPA."[47] Anew contends that because the Terra Subs are identified as subsidiaries of Terra Parent and collectively referred to as the "Company," the Terra Subs fall under the Delaware Forum Provision. This reasoning is flawed.

First, as Anew admits, the SPA does not define the term "party."[48] Second, Anew's argument that the Delaware Forum Provision's use of "party"—rather than phrases like "each party hereto," "each party to this agreement," or "the parties

---

[44] *Cap. Gp. Cos., Inc. v. Armour*, 2004 WL 2521295 (Del. Ch. Nov. 3, 2004). Because the SPA is governed by Delaware law, the Court relies on such in deciding whether Terra is a party to the SPA.

[45] *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 271 (Del. 2022) (cleaned up). *See also Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 172 (Del. 2002) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract." (quoting *Wallace v. Wood*, 752 A2d 1175, 1180 (Del. Ch. 1999)).

[46] Sur-Reply at 1.

[47] *Id.* at 2.

[48] *Id.*

hereto," which appear elsewhere in the SPA—alters the analysis is unconvincing.[49] True, the Delaware Forum Provision lacks such limiting language, but this point is less compelling given that "party" is undefined.[50] By contrast, the AMA explicitly defines "Party," demonstrating that the drafters knew how to create a defined term when intended.[51]

This argument also overlooks the deliberate exclusion of the Terra Subs as signatories to the SPA, especially because the Terra Subs are parties to the AMA. Thus, the Court finds the Terra Subs are not parties to the SPA.

    2. *The Terra Subs are not subject to the Delaware Forum Provision pursuant to the* Capital Group *test—the AMA's Arbitration Clause thus controls.*

The Court of Chancery's decision in *Capital Group Cos. v. Armour* establishes the criteria for enforcing forum provisions against closely related non-signatories:

    (i) the agreement contains a valid forum selection provision;

    (ii) the non-signatory has a sufficiently close relationship to the agreement, either as an intended third-party beneficiary under the agreement or under principles of estoppel; and

    (iii) the claim potentially subject to the forum selection provision arises from the non-signatory's standing relating to the agreement.[52]

---

[49] *Id.*

[50] SPA § 7.10.

[51] AMA at 1.

[52] 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004), *as revised* (Nov. 3, 2004); *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1090 (Del. Ch. 2021) (first citing *Cap. Gp.*, 2024 WL 2521295, at *5; and then citing *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019). *See also Sustainability P'rs LLC v. Jacobs*, 2020 WL 3119034, at *5 (Del. Ch. June 11, 2020) ("For a non-signatory to be bound by a contract's forum selection clause, the answer to all three questions must be yes." (citation omitted)).

In *Florida Chemical Co., LLC v. Flotek Industries, Inc.*, the court addressed a similar issue involving multiple agreements with a parent and a subsidiary.[53] In *Flotek*, the primary agreement contained a Delaware forum selection provision, but the wholly owned subsidiary was not party to the primary agreement.[54] Instead, the subsidiary was party to a closely related agreement, executed simultaneously, which lacked a forum selection provision.[55]

Like here, in *Flotek*, the parties agreed that the forum selection clause was valid and enforceable, satisfying the first element of the *Capital Group* test.[56] The court found the second element was met because the subsidiary "benefited directly from the [p]urchase [a]greement, because the [p]urchase [a]greement led to the execution of the [secondary] [a]greement."[57] Here, the Court will also assume, for its analysis, that the Terra Subs have a sufficiently close relationship with the SPA, because the SPA led to the execution of the AMA.[58]

As to the third *Capital Group* element, the *Flotek* court faced challenges because the secondary agreement lacked a forum selection clause.[59] The court held

---

[53] 262 A.3d 1066 (Del. Ch. 2021).
[54] *Id.* at 1089.
[55] *Id.* at 1075–76, 1079, 1092.
[56] *Id.* at 1090.
[57] *Id.* at 1091.
[58] *See id.* at 1092–93 (explaining foreseeability of forum provision binding subsidiary due to control and significant connection to agreements).
[59] *Id.* at 1089.

12

the subsidiary was bound by the forum selection clause in the main agreement but noted that parties could contract around this issue:

> [W]hen a controller enters into a primary agreement that contains a forum selection provision that encompasses claims that arise under or relate to other closely related agreements, the controller intends for the forum selection provision (i) to encompass claims that arise under or relate to the other closely related agreements, even if asserted by or against the controller's affiliates and (ii) to bind the controller's affiliates who are parties to those agreements. To contract around this result, parties can simply agree to a narrower forum selection provision in the primary agreement, or they can include a specific forum selection provision in the closely related agreement. This default rule enables parties to enter into overarching forum selection provisions in a primary agreement without requiring that every controlled affiliate become a party to that agreement.[60]

The parties did exactly that here. Although the AMA contains an arbitration clause instead of a forum selection clause, both serve a similar function.[61] "An arbitration provision is, in effect, a specialized kind of forum selection clause, so the same principles apply."[62] Thus, the Court adopts the *Flotek* court's sound reasoning and finds the Terra Subs—as non-signatories subject to another forum selection clause—are not bound by the SPA's Delaware Forum Provision.[63]

---

[60] *Id.* at 1092.

[61] *Nat'l Indus. Gp. v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 384 n.41 (Del. 2013) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)).

[62] *Gandhi-Kapoor*, 307 A.3d at 339 (cleaned up).

[63] Because the Court finds the Terra Subs are not bound by the SPA, the issue of whether the amended AMA constitutes a new agreement is of no moment.

13

## B. The Arbitrator must decide substantive arbitrability.

Having decided that the AMA's Arbitration Clause applies, the Court must next determine whether the court or the arbitrator addresses the issue of substantive arbitrability. The parties agree that the AMA is a valid and enforceable agreement; thus, the sole issue is whether the determination of the arbitration clause's scope was delegated to the arbitrator. Because the AMA is governed by New York law, the Court resolves this issue accordingly.

Under New York law, "parties may agree to have an arbitrator decide not only the merits of a dispute, but also gateway questions of arbitrability."[64] When parties "explicitly incorporate rules that empower the arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[65] Thus, where there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability, "courts must respect the parties' decision as embodied in the contract by leaving the arbitrability issues for the arbitrator."[66]

The AMA states that "[i]f the Parties are unable to settle any dispute arising out of or connected with this Agreement within 30 Business Days . . . , the matter in dispute shall be referred to and finally resolved by arbitration under the Rules of

---

[64] *Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 301 (N.Y. 2024) (collecting cases).
[65] *Mouli v. Stern*, 236 A.D.3d 599 (N.Y. 1st Dep't 2025) (citations omitted).
[66] *Wu*, 42 N.Y.3d at 302 (citations omitted).

Arbitration of the International Chamber of Commerce[.] . . ."[67] Rule 6(3) of the International Chamber of Commerce Rules provides that gateway questions of arbitrability shall be determined by the arbitrator.[68] This constitutes clear and unmistakable evidence that the parties intended for the arbitrator to determine issues of substantive arbitrability for disputes arising out of the AMA.

## CONCLUSION

For the reasons stated, the Motion is granted, and the Complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[67] AMA § 20(a).

[68] *See* 2021 Arbitration Rules, Art. 6 by Int'l Chamber of Com., https://iccwbo.org/dispute-resolution/dispute-resolution-services/arbitration/rules-procedure/2021-arbitration-rules/#block-accordion-6 (last visited Nov. 2, 2025) (mandating that "any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal").

15